Graves, Appellant, *v.* Pittsburgh Consolidation
Coal Co.

Argued October 3, 1946. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John E. Evans, Sr.,* with him *Evans, Evans &
Spinelli,* for appellant.

*Earl F. Reed,* with him *James A. Bell* and *Thorp,
Bostwick, Reed & Armstrong,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 8, 1946:

This case involves the same corporate merger considered in the two preceding cases, *Era Company, Ltd., v. Pittsburgh Consolidation Coal Co.,* 355 Pa. 219; *Martin v. Pittsburgh Consolidation Coal Co.,* 355 Pa. 223.

Appellant was the registered owner of 200 shares in the Pittsburgh Coal Company. He filed a written objection to the merger. Two days after the merger had been approved he bought 50 additional shares and a few days later acquired another 50 shares. Later he sold 100 shares which he had held *prior* to the notice of merger. Appellant now holds 100 shares purchased *before* and 100 shares *after* the merger. Appellant petitioned for the appointment of appraisers to fix the fair value of 200 shares of stock. Upon answer, issue joined and hearing, Judge PATTERSON in a well considered opinion, dismissed the petition as to 100 shares, but allowed it to stand as to the remaining 100 shares. This appeal followed.

We agree with the reasoning of the learned court below. The record discloses that the two lots of 50 shares each were shares which had voted to approve the merger. The certificate for the 100 shares sold was delivered up and cancelled. In order that a dissenting stockholder may receive the fair value of his shares he must *"surrender his certificate"*. Appellant, by the sale, elected to sell his stock to the new purchaser and not to receive its fair value from the reorganized corporation. He placed it beyond his power to surrender the certificates as required by the act.

Appellant argues that because, as owner of 200 shares he objected to the merger and demanded an appraisement and payment of the fair value of his 200 shares, he came within the terms of the act by offering to deliver any 200 shares which he may then own; that shares of stock, like coal from the same mine, grain of a uniform quality, etc., are fungible goods and therefore any shares

of stock may be used in place of others: *In re McMillan, Rapp & Co.*, C. C. A., Pa., 123 F. 2d 428; *Dobbs v. Perlman*, 2 S. E. 2d 109; *Richert v. Bennett*, 283 Ill. App. 479. But in the present case all the corporate stock had earmarks distinguishing one share from another. Under the Business Corporation Act of May 5, 1933, P. L. 364, as amended March 31, 1941, P. L. 13, all holders of stock were required to vote for or against the merger. If they failed to vote they were regarded as voting in the affirmative. The title to the shares voted was in the name of the registered owner. In the instant case the two lots of 50 shares each were shares which were recorded as voting *for* the merger, whereas the 100 shares later sold were shares which voted against the merger and where the owner elected to sell them and take the price from the buyer rather than the fair value from the merged corporation.

We agree with the court below that shares of stock are ordinarily regarded as fungible: ". . . but stock certificates are not, especially when certain rights, such as the right to a dividend or the right to such remedy as here is involved, are appended to the possession; and when either exhibition or surrender of a certificate is essential to the assertion of such rights, the doctrine of fungibility cannot in such circumstances be invoked."

The decree is affirmed at the cost of appellant.