## North Penn Quarter Midget Club Appeal

*John E. Landis,* for appellant.

*John P. Knox,* for appellee.

HONEYMAN, J., November 28, 1962.—On June 10, 1958, a special exception was granted to appellant, North Penn Quarter Midget Club, a nonprofit unincorporated association, for the use of a tract of land on Welsh Road in Montgomery Township as a site for the club's racing activities. This special exception was granted subject to the following conditions:

"1. That the area affected by this order shall be confined to an area beginning along Welsh Road on the Heckler property 100 feet Northwest of the Moynahan property, extending from that point Northwest along Welsh Road 200 feet and confined between parallel lines at right angles with Welsh Road and extending in a Northeasterly direction 300 feet in depth from Welsh Road. 'Area' includes the track, the area where the spectators will be located and the area where any work is done on the automobiles. 'Area' does not include the parking of the automobiles of the spectators and others. Parking facilities for automobiles will be provided on another portion of the Heckler property near Mr. Heckler's buildings. All parking will be off the street.

"2. That a lease will be executed for not less than three (3) years covering the above premises for the use in question at a nominal consideration.

"3. That any artificial lighting and loud speakers or public address system be installed in such a way so as not to unreasonably and unduly annoy and disturb the nearby property of Edward T. Moynahan, et ux, and any other nearby inhabitants; all lights shall be out, loud speakers and music shall cease and the running

and operating of midget automobiles shall cease at 11:00 P.M."

Following the grant of this special exception, appellant constructed a race track, judge's stand, concession stand, and a fence around a large portion of the area covered by the special exception. On or about September 13, 1961, having received a number of complaints about the operation of appellant's race track, the zoning officer of Montgomery Township ordered that the club cease all its racing activities on the tract in question and revoked the special exception previously granted by the board of adjustment. The club appealed from this order to the board of adjustment. A number of neighboring landowners then filed a petition with the board, praying for the revocation of the special exception. This petition and the appeal from the zoning officer's order were advertised and heard together by the board. Following the hearing, the board issued an opinion and order in which it affirmed the zoning officer's cease and desist order and revoked the special exception. The appeal to this court followed.

The first question presented by this appeal relates to the status of the petition filed by appellant's neighbors. Since the grant of the special exception in June, 1958, was not appealed to the court, it is clear that these neighbors had no standing before the board as petitioners praying for the revocation of the special exception. This is so because the procedure provided by the enabling act for appeal from an administrative officer's decision to the zoning board of adjustment and then to the court of common pleas is exclusive: Pittsburgh Outdoor Advertising Company v. Clairton, 390 Pa. 1 (1957), and cases cited therein. It is equally clear that the board of adjustment had no jurisdiction to entertain the petition because its power to act is limited to requests for special exceptions, requests for variances, and appeals from administrative decisions: Archbishop

O'Hara's Appeal, 389 Pa. 35, 52 (1957) ; Wetherill v. Zoning Board of Adjustment, 5 Bucks 264 (1956). The petition of appellant's neighbors, therefore, should have been dismissed by the board.

The next question relates to the affirmance of the zoning officer's revocation of appellant's special exception. After a careful search of the law we have been able to find no authority for a zoning board's, or a zoning officer's, revocation of a special exception which was validly and legally granted initially, and on which the grantee thereof relied in making expenditures of money. In the present case, in reliance upon the exception, appellant has made expenditures to improve the tract for its use purposes, and there is no intimation in the record that these expenditures were not made in good faith. Under these circumstances, then, appellant has acquired a vested right which cannot be revoked. As was said in Herskovits v. Irwin, 299 Pa. 155, 161 (1930) :

"A permit having been issued and work done thereunder, a right was created in the applicants as to which they were entitled to protection; the subsequent attempt to revoke the permit could not abrogate this right. . . ."

Counsel for the township argues, however, that appellant's special exception may be revoked because of alleged violations of the conditions imposed by the board of adjustment and because the board is granted the authority to do so by section 1408 of the Montgomery Township Zoning Ordinance. That section provides as follows:

"Section 1408. Certificates of the Board. It shall be the duty of the Board to issue a Certificate in any case wherein a special exception or a variance is granted. The Board may cancel or revoke any such Certificate for any violation of this Ordinance or of conditions imposed."

We cannot accept the township's contention. Section 2007 of the Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §67007, sets forth the powers that may be granted to zoning boards of adjustment and these powers do not include any authority to revoke a special exception once such exception is legally and properly granted by the board and acted upon by its recipient. The above-quoted section of the ordinance, therefore, being without basis in the enabling legislation, is void and of no effect. Moreover, to hold otherwise and to say that zoning boards have the power to revoke such special exceptions would be to allow a great deal of uncertainty and impermanence in proceedings which are concerned with important and very valuable property rights. The revocation of the special exception, therefore, was unauthorized and must be reversed.

The sole question remaining for decision relates to the validity of the zoning officer's cease and desist order and the zoning board's affirmance thereof. Section 2007(g)(1) of the Second Class Township Code, as amended, 53 PS §67007, gives to the board of adjustment the power to hear and decide appeals where it is alleged there is error in "any order requiring an alleged violator to stop, cease and desist, made by the zoning officer. . . ." By necessary implication, therefore, the zoning officers are given power to issue stop, cease and desist orders to violators of the ordinances adopted pursuant to the code. Sub-paragraph (a) of that same section of the code provides that the "board of adjustment may, in appropriate cases and *subject to appropriate conditions and safeguards*, make special exceptions to the terms of the ordinance. . . ." (Italics supplied.) We therefore hold that the recipient of a special exception who violates the conditions and safeguards imposed by the board of adjustment is in violation of the ordinance and is subject to a stop, cease and desist

order of the zoning officer. The determinative question, therefore, is whether the conditions were in fact violated. The board found that they were.

In its opinion, the board of adjustment placed great stress upon the facts, as they found, that appellant has constructed a concession stand; that appellant has operated on nights other than Wednesdays and Saturdays; that appellant has operated at times other than during the summer months; and that each midget auto made more noise than a conventional power lawnmower. The board states that all of these things are contrary to appellant's declarations of intentions at the time of the original hearing in 1958. However, since the record is lacking in evidence of fraud or other improper conduct on appellant's part at the time of the original grant of the special exception, and since the board did not see fit to impose conditions relating to these matters, they are irrelevant and do not justify the issuance of a stop, cease and desist order.

The board also considered it important that repeated trespasses upon neighboring land were committed by spectators who came to see the midget races and that the noise of the racing cars was very annoying to several of the neighboring property owners. While these matters may give rise to a cause of action for a nuisance, they do not amount to a violation of conditions imposed, they have no relevance whatever in a zoning forum, and they should have been excluded by the board. See Baranoff v. Zoning Board of Adjustment, 385 Pa. 110, 119 (1956). The board also stated, as a ground for the affirmance of the stop, cease and desist order, that the condition regarding the acquisition of a lease for not less than three years was violated by appellant. However, even if such a lease had been obtained, its term would have expired prior to the date of the issuance of the zoning officer's order. This being the case, we consider that violation of the condition as

immaterial and not sufficient justification for the order of September 13, 1961. Moreover, there is some evidence in the record that appellant has obtained a "verbal lease" of the premises in question. Obviously, appellant has continuously enjoyed some form of tenancy or occupancy of the premises for a period in excess of three years.

The board also found as a fact that there have been repeated violations of the conditions relating to the parking of automobiles and to the installation of a public address system. Upon a careful review of the evidence before the board, we are satisfied that these findings are supported by the record. This being the case, the stop, cease and desist order should be permitted to stand until such time as these two violations of conditions are corrected or abated.

We, therefore, make the following

### Order

And now, November 28, 1962, the decision of the Zoning Board of Adjustment of Montgomery Township is affirmed in part and reversed in part. That part of the said decision which revokes the special exception granted by the zoning board of adjustment on June 10, 1958, is reversed, and that part of the decision which sustains the stop, cease and desist order issued by the zoning officer of Montgomery Township on September 13, 1961, is sustained.